**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES,

Plaintiff,

v.

KEVIN LYNCH,

Defendant.
_______________________________/

No. C 08-00660 SI

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

On February 6, 2009, the Court heard oral argument on defendant's motion to suppress evidence. Having considered the arguments of the parties and the papers submitted and for good cause shown, the motion is DENIED.

## BACKGROUND

On August 29, 2008, Magistrate Judge Spero issued a search warrant for an area consisting of five adjacent lots in Mendocino County owned by defendant. The area included defendant's residence, 52001 Iron Creek Road, Laytonville, California. The search warrant authorized officers to search for, *inter alia*, marijuana, tools and equipment used to cultivate marijuana, publications about growing marijuana, financial records, and customer lists. On September 4, 2008, officers executed the search warrant and seized marijuana plants, processed marijuana, weapons, and $7,595 in currency from areas described by the FBI as Grow Sites A-F. From defendant's residence, officers seized, *inter alia*, weapons, ammunition, computers and several bags containing an unidentified green leafy substance. Defendant challenges only the evidence seized from the

United States District Court
For the Northern District of California

residence and the vehicles parked near the house.[1]

Officer John McCutcheon, an investigator with the Sonoma County District Attorney's Office, prepared the affidavit in support of the warrant. Decl. of Edward W. Swanson in Supp. of Def. Mot. to Suppress ("Swanson Decl."), ex. B, at 2. McCutcheon's affidavit states that the land in question consists of five lots that are listed in the county recorder's office as belonging to defendant. *Id.* The entrance to the area is gated. *Id.* at 3. On August 5, 2008, an investigator in a helicopter flew over the five lots. *Id.* at 2. Using a camera with a telephoto lens, he observed several dirt tracks crossing the premises; a road to the gate the lead leading to a trailer, a shed, and a barn-type structure in a clearing; and several cars. *Id.* at 3-4. He also made the following observation: "Brush grew throughout the PREMISES and, interspersed with the brush [the investigator] saw what he recognized, based on his experience and training, to be marijuana plants." *Id.* at 4. In addition, the affidavit stated that on June 2, 2008, a deputy with the Mendocino County Sheriff's Department entered the property to investigate an unrelated matter. *Id.* at 3. While on the property, the deputy stood at the front door of the residence on the premises and spoke with defendant. *Id.* During the conversation, the deputy noticed the smell of marijuana emanating from inside the premises. *Id.* McCutcheon concluded in his affidavit that the area was being used as an "outdoor grow" for the cultivation and distribution of marijuana. *Id.* at 4.

## DISCUSSION

### 1. The Search Warrant Was Supported by Probable Cause

Defendant contends that McCutcheon's affidavit did not establish probable cause to search defendant's residence. The issuance of a search warrant is reviewed for clear error. *See United States v. Baldwin*, 987 F.2d 1432, 1435 (9th Cir. 1993). This Court must determine whether there was a "substantial basis" for concluding that the warrant was supported by probable cause. *See United States v. Brown*, 951 F.2d 999, 1002 (9th Cir. 1991) (citing *Illinois v. Gates*, 462 U.S. 213,

---

[1] According to defendant, photographs of the evidence indicate that some items were seized from cars on the premises, but this information is not reflected in the warrant return. As the following discussion will make clear, the exact location of the seized evidence does not affect the outcome here.

236 (1983)). The judge making the original determination of probable cause is accorded significant deference by the reviewing court. *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (applying totality of circumstances analysis to uphold warrant and emphasizing "deferential approach" of reviewing courts). Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

Defendant argues that the August 5 aerial surveillance did not establish probable cause to search his residence because the affidavit did not set forth any reasons that evidence of a crime would be found in the residence. Indeed, the affidavit makes clear that the investigators believed that the land was being used to grow marijuana *outside* "to avoid the tell-tale high power consumption that an indoor grow requires," *see* Swanson Decl., ex. B, at 4, not in defendant's residence. McCutcheon concluded based on his "experience and training" that the marijuana grown on the lots was being processed "in the buildings on the PREMISES[2] and then stored in and/or transported by vehicle for off-site distribution," *see id.*, but does not include any specific facts in support of this conclusion.[3] At oral argument, defendant made an offer of proof that the five lots in question cover about eighty-three acres. He contended that the observations from the overflight that brush grew "throughout" the area and marijuana plants were "interspersed with the brush" did not establish that marijuana was grown throughout the five lots and therefore did not support the inference that the land was being used for an outdoor grow.

Defendant relies on *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004), an outdoor grow case in which the Sixth Circuit found that there was not probable cause to search the defendants' residence. In *Carpenter*, an investigator conducting helicopter surveillance noted patches of marijuana growing in fields "near" a residence belonging to the defendants. *Id.* at 593.

---

[2] In his affidavit, McCutcheon refers to "premises" in all-caps to refer to the five lots owned by defendant and the buildings on those lots, including defendant's residence.

[3] McCutcheon also relied on the deputy's observation on June 2 that he smelled marijuana smoke emanating from defendant's residence. Defendant contends that this fact cannot support a finding of probable cause because the deputy's observation on June 2 had no bearing on whether evidence would be present on the premises in late August. The Court need not resolve this issue because, as discussed below, the other facts set forth in McCutcheon's were sufficient to establish probable cause.

The investigator also noticed a road connecting the residence to the marijuana plants. *Id.* *Carpenter* held that the investigator's affidavit did not provide a substantial basis for the magistrate judge's conclusion that probable cause existed to search the residence because it "failed to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place." *Id.* at 594 (emphasis in original). The facts set forth in the affidavit "were too vague, generalized, and insubstantial to establish probable cause." *Id.* at 595.

This case is unlike *Carpenter*. In *Carpenter*, the search warrant did not set forth facts that established a "nexus" between the illegal activity and the residence. *Id.* That is, the fact that the marijuana plants happened to be growing on land near the residence did not demonstrate that residents of the house were involved in cultivating the plants. *Carpenter* speculated that probable cause likely would have existed if the affidavit had stated that "beaten paths led from the marijuana patches to the residence, and that two men had been spotted walking from the marijuana patches to the residence". *Id.* The affidavit in this case supplied the nexus between the plants and the residence that was missing in *Carpenter*. Here, the search warrant covered five lots that were listed in the county recorder's office as belonging to defendant. The entrance to the lots was gated. These facts make it reasonable to conclude that defendant owned and controlled the area.

In addition, McCutcheon's affidavit states that an investigator using a telephoto lens on an overflight observed brush growing "throughout" the area and "interspersed with the brush . . . marijuana plants." Swanson Decl., ex B, 4. Defendant urges the Court to read the word "throughout" to apply only to the brush and to give no information about whether the marijuana plants were also growing throughout the eighty-three acres. The Court finds that the most natural reading of the affiant's observations – that there was brush throughout the area and that there were marijuana plants interspersed with the brush – is that both the brush and the marijuana plants were growing throughout the five lots.

Having observed marijuana plants growing interspersed with brush throughout the area, the investigator used his training and experience to infer that the brush was being used to hide the plants and that an outdoor grow operation was being conducted on defendant's land.

Based on the inferences that defendant owned and controlled the area on which an outdoor

grow operation was being conducted, McCutcheon stated in the affidavit, "I . . . believe, based on my experience and training, that the marijuana that is being grown in the brush is being processed in the buildings on the PREMISES and then stored and/or transported by vehicle for off-site distribution" and that indicia of drug processing and distribution would be found on the lots. Swanson Decl., ex. B, at 4, 9. Judge Spero was entitled to rely on the investigators' training and experience to conclude from these facts that there was a fair probability that evidence of drug trafficking would be found in buildings on land where an outdoor grow was being conducted, including defendant's residence. *See United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) ("issuing judges may rely on the training and experience of affiant police officers"); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. In the case of drug dealers, evidence is likely to be found where the dealers live.") (internal citations omitted).

Accordingly, the Court concludes that, under the totality of the circumstances, the affidavit contained sufficient facts to support Judge Spero's finding that there was a fair probability that the residence at 52001 Iron Creek Road contained evidence of marijuana cultivation and distribution.

**2. Even if the Search Warrant Were Not Supported by Probable Cause, the Seized Evidence Would Fall Within the Good-Faith Exception to the Exclusionary Rule**

Even if McCutcheon's affidavit had not set forth sufficient evidence to establish probable cause that evidence would be found in defendant's residence, the challenged evidence would not be suppressed because it falls within the good-faith exception to the exclusionary rule. Evidence is not suppressed if it was obtained "in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). Suppression will follow, however, "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923.

The officers' reliance on the warrant issued in this case was reasonable. McCutcheon

believed there was a sufficient nexus between the marijuana plants and defendant's residence because he observed facts that led him to conclude that an outdoor grow operation was being conducted on the property. It was reasonable for him to conclude from these observations and his training that the buildings on the lots were likely being used in the grow operation and would contain evidence. *Accord Carpenter*, 360 F.3d at 596 (exclusionary rule did not apply to evidence seized from house near marijuana plants because "reasonable officers could have believed that the affidavit as submitted . . . was sufficient to support the issuance of the warrant"). There is no indication here that McCutcheon omitted or fabricated facts. Even if there were not probable cause for the warrant, this case falls within the "good-faith exception" and the evidence seized from the house would not be suppressed.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to suppress.

**IT IS SO ORDERED.**

Dated: February 10, 2009

SUSAN ILLSTON
United States District Judge